UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JASMOND DANAE OSBORNE #604355          CIVIL ACTION NO. 18-cv-346 SEC P

VERSUS                                 JUDGE ELIZABETH E. FOOTE

JASON KENT                             MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Jasmond Osborne ("Petitioner") was charged in Caddo Parish with attempted first-degree murder of a police officer, two counts of possession with intent to distribute a controlled substance, and possession of a handgun while in possession of a controlled substance. Based on a plea agreement, Petitioner pled guilty to attempted first-degree murder and was sentenced to serve 30 years without benefits. Petitioner filed an appeal and a post-conviction application in state court. He now seeks federal habeas corpus relief on the grounds that (1) he received ineffective assistance of counsel, (2) his plea agreement was breached, and (3) his sentence was excessive. For the reasons that follow, it is recommended that the petition be denied.

**Facts**

The State outlined the case against Petitioner at a preliminary hearing. A police officer testified that the Shreveport Police Department's narcotics unit obtained information from an informant that drugs were being sold from a motel room at the Plantation Inn in Shreveport. The informant completed a controlled buy and told police

that he had seen a large amount of marijuana and several firearms in the room. The agents obtained a search warrant for room 236.

The officers executed the warrant at 9:41 p.m. on a January night. They were dressed in tactical gear marked "POLICE" and announced, "Shreveport police, search warrant," and hit the door of room 236 with a battering ram. An officer testified that the announcements were repeated as the ram was used to break through the door. Soon after, a gun was fired, and Officer Greg Walker was struck by a bullet in his upper chest, near his throat. The officers retreated, and the suspects inside eventually crawled out of the room and surrendered.

The officers arrested Petitioner and two other men who were in the room. The officers learned that the adjoining room, room 238, was reserved by the same person who booked room 236. A warrant for room 238 revealed two more persons involved in the drug distribution, over $10,000 in cash, approximately six pounds of marijuana, ledgers, other evidence of drug dealing, and handguns that included a revolver with five rounds and an empty casing. Petitioner and the other two men in room 236 admitted that they were armed with handguns. They said they had been robbed before, so they needed the guns for protection.

An officer testified at the preliminary hearing that Petitioner told him that his role was to protect the money and take it back to Texas after all of the marijuana was sold. Petitioner said that he did not hear the officers yelling "police," and when he heard a noise outside, he thought they were being robbed. He responded by firing one shot. The other

suspects admitted that they heard the announcements and were aware it was the police entering the room before Petitioner fired his gun.

After the jury had been selected (but not sworn), the trial court held a free and voluntary hearing to determine whether Petitioner's post-arrest statements to law enforcement officers were admissible at trial. During this hearing, the prosecutor and defense counsel addressed the trial court with regard to plea discussions. The following colloquy took place:

> PROSECUTOR: [T]he State had initially offered the defendant to plead to count one as charged to attempted first degree murder of a police officer, to be sentenced by the Court.
>
> No agreements to sentence, we would go into a sentencing hearing, to allow [defense counsel] to present any evidence on behalf of his client, allow the State to present any aggravating factors on behalf of our prospective clients. I had indicated if he [was] to do that that we would dismiss all other counts in the bill of information pertaining to the possession with intent to distribute marijuana, and his range would be twenty to fifty, in that fashion. I've tendered this offer to [defense counsel]. I know he's had extensive conversations with his client in regard to this offer[.]
>
> DEFENSE COUNSEL: [W]hat [the prosecutor] said is correct, he has made an offer that I felt was a very fair offer. I have recommended to my client that he accept it, that he go through a sentencing hearing. With his total lack of any record that that would be in his favor, plus the fact that he accept the responsibility for his actions.
>
> I have and continue to recommend as strongly as I possibly can that this is the absolute last moment he can accept that offer. I've recommended it to him but his instructions to me are that he wishes to reject that offer. Is that correct, Jasmond?
>
> DEFENDANT: Yes, sir. I was trying to get a lower charge.
>
> I was asking them in the hallway, you know, about the attempted first degree murder and I was trying to see about aggravated battery, you know.

> I was just trying to get a lower thing. I was going to plead out to be seven to ten on the aggravated battery, sir, because prior to—my history I ain't never been in trouble or jail or nothing.
>
> COURT: All right sir, let's make sure we're very clear. I don't know of there ever being an offer by the District Attorney for a less[er] charge of aggravated battery. The charge is and has always been attempted first degree murder of a police officer, that's been the charge.
>
> DEFENDANT: Yes, sir.
>
> COURT: And by law that carries a minimum mandatory term if convicted of twenty years, and I believe that's without benefit of probation, parole or suspension of sentence, up to fifty years.
>
> DEFENDANT: Yes, sir.
>
> COURT: [I]t is not up to the Court to make decisions regarding the charging[.] [I]t's up to the elected District Attorney. The elected District Attorney is proceeding as charged and your choice, sir, would be to plead guilty or plead not guilty, as you have done.
>
> DEFENDANT: Yes, sir.
>
> COURT: And, by the way, the Court has made no promises at all about sentencing.
>
> All I know is it would be between a minimum of twenty years without benefit of probation, parole or suspension of sentence, up to fifty, and I would make a decision hearing all the information that I need to hear in a sentencing hearing.

Tr. 687-90. The court next held a free and voluntary hearing and determined that Petitioner's statements to the officers were admissible. Tr. 716.

With the trial ready to commence, Petitioner announced that he wished to change his plea to guilty to attempted first-degree murder. The prosecutor stated that "in return for his plea we will dismiss the remaining count of possession with intent to distribute marijuana" and "there is no agreement as to sentencing, that the sentencing would be

Page 4 of 14

conducted or would be given down by the Court pursuant to a sentencing hearing, that the range is twenty to fifty." Tr. 717.

Judge Scott Crichton conducted a plea colloquy with Petitioner, who was then 26 years old. Petitioner agreed that there was "no agreement as to sentencing" and said that he understood that the sentencing range was 20 to 50 years without benefits. The judge said that there were no promises as to the outcome, and he would listen to a sentencing hearing before deciding the sentence. Petitioner was asked if the decision to plead guilty was his decision. He first said, with hesitation, that it was, so the court asked again. Petitioner said, "To be honest with you, no." After consultation with counsel, Petitioner said that it was his decision to plead guilty and that no one had forced him to do so. Tr. 718-27.

A sentencing hearing was held a few weeks later. It began with the prosecutor informing the court that he had consulted with the victim, Officer Walker, and his wife, who were present, about "the offer tendered by defense to have an agreed upon sentence of 30 years at hard labor with credit for time served." Officer Walker said that he agreed to the recommended sentence. Defense counsel stated, "On behalf of Jasmond Osborne, Mr. Osborne accepts this offer."

Defense counsel then tendered a letter of apology that he said Petitioner wrote before the agreement was reached. Petitioner orally addressed the officer and personally apologized in court. His mother also addressed the court. The judge stated that it was his understanding that the lawyers had "reached an agreement as to the sentence," and both counsel said that was correct. The court reviewed sentencing factors including Petitioner's

background and the seriousness of the crime. He repeated that there was an agreement as to the outcome and said that the court would approve that agreement. He then imposed a sentence of 30 years at hard labor, without benefits, but with credit for days in jail. Tr. 734-41.

**Ineffective Assistance of Counsel**

Petitioner argues in his habeas petition that trial counsel Joseph M. Clark, Sr. (now deceased) rendered deficient performance that prejudiced Petitioner "as he was ultimately sentenced to 30 years at hard labor, 10 more than he agreed to when speaking with his attorney." Petitioner contends in his habeas memorandum that defense counsel told him that he would get 20 years in prison (the minimum) for pleading guilty because he was a first offender and was accepting responsibility. Petitioner claims that counsel told him that the judge would ask questions to determine whether Petitioner was pleading guilty of his own free will, and counsel told him to say "no" when the judge asked whether anyone promised him anything. Petitioner contends that counsel told him that the 20-year term "was not going to be mentioned but that there was agreement by the state that he would only get the 20 year sentence."

Petitioner first presented a version of this argument in his post-conviction application when he argued that counsel was ineffective for failure to object to a sentence of 30 years when the agreed sentence was 20 years. Petitioner repeated that counsel told him that the offer was for 20 years, only to have Petitioner blindsided with a 30-year sentence at the hearing. Tr. 956-60. Judge Katherine Dorroh ruled on the post-conviction application. She reviewed the guilty plea colloquy at which it was stated that there was no

agreement as to sentence and held, in light of the colloquy, that "Petitioner cannot establish that he was to receive an agreed-upon sentence." Thus, he could not establish that his counsel was ineffective for failing to object to the 30-year sentence. Tr. 973-76. The state appellate court denied a writ application "on the showing made." Tr. 1028. The Supreme Court of Louisiana summarily denied a writ application and noted that Petitioner "fails to show he received ineffective assistance of counsel" under the Strickland standard. Justice Hughes cast a lone vote to grant an evidentiary hearing. Tr. 1061-63.

The State argues that Petitioner did not properly exhaust his state court remedies with respect to this claim. It urges that Petitioner did present to the appellate and supreme court the claim he now raises in federal habeas, but it contends that the claim presented to the trial court in his post-conviction application rested on a different theory and factual basis that precludes exhaustion, which requires a proper presentation of the federal claim at each level of the state courts. The undersigned finds that the arguments at the trial and other levels were different, yet sufficiently similar to fairly present a claim to the state courts that counsel was ineffective because he allegedly manipulated Petitioner into pleading guilty based on a promise of a 20-year sentence. The claim will be treated as exhausted and denied by the state courts on the merits.

An ineffective assistance claim is governed by the two-part test of Strickland v. Washington, 104 S.Ct. 2052 (1984). The petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 2064. With respect to performance, the court must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.

Strickland, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 104 S.Ct. at 2064.

Even if counsel is ineffective, the petitioner must also show prejudice. That requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To show such prejudice in a guilty plea case "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985). A "bare allegation" that the petitioner would have insisted upon going to trial is insufficient to establish prejudice, especially where evidence of guilt against the petitioner was strong. King v. Davis, 898 F.3d 600, 604-05 (5th Cir. 2018).

Petitioner's claim was adjudicated and denied on the merits by the state court, so Petitioner must show that the Louisiana courts' rejection of his ineffective assistance of counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the

determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. See Young v. Spinner, 873 F.3d 282, 285 (5th Cir. 2017) (applying deference in a guilty plea context).

The record shows that when Petitioner agreed to enter his guilty plea, there was no promise of a sentence other than it would be within the statutory range of 20 to 50 years. Petitioner acknowledged that fact multiple times during the court of entering his guilty plea. After the plea was entered and before the sentencing, the parties apparently reached an agreement for a 30-year agreed sentence. This was discussed in detail in Petitioner's presence at the sentencing hearing. Petitioner was allowed to address the court at the hearing, and he did so, but he never mentioned any contention that there was an agreement that he would receive only 20 years. Petitioner has not pointed to any witness statements, correspondence, or any other evidence that would support his conclusory assertion. Given the record and Petitioner's complete lack of evidence, the state court's denial of this claim

on the merits was not an unreasonable application of Strickland or any other clearly established federal law.

Petitioner complains that the state court did not afford him an evidentiary hearing to flesh out his claim. But federal deference to a habeas claim presented under Section 2254(d) "applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). And a full and fair hearing of the state court is not a precondition to the federal court according the deference and presumption of correctness required by Section 2254 with respect to both findings of fact and decisions on the merits. Boyer v. Vannoy, 863 F.3d 428, 446 (5th Cir. 2017), citing Valdez v. Cockrell, 274 F.3d 941, 951 (5th Cir. 2001). Review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits," Pinholster, 131 S.Ct. at 1398, and it is generally reversible error for a federal district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). Petitioner is not entitled to habeas relief on this claim.

**Broken Plea Agreement**

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." Santobello v. New York, 92 S.Ct. 495, 499 (1971). Petitioner cites this law and then alleges "that his plea agreement was broken and the contract he entered into when he agreed to enter a guilty plea was breached when the Judge sentenced him to thirty (30) years instead of the twenty (20) that he negotiated for with defense counsel and the State." He offers no supporting evidence but complains that the issue was

not fully developed in the state habeas proceedings because his request for an evidentiary hearing was denied. The State responds that the claim is unexhausted because it was not included in his arguments made on direct appeal and was not included in his post-conviction application.

The State may be correct that Petitioner did not exhaust his administrative remedies with respect to this claim, but the court may also deny relief on the merits even if state remedies were not exhausted. 28 U.S.C. § 2254(b)(2). Petitioner contends, without any supporting evidence or particular facts, that he negotiated a 20-year agreed sentence with the State and defense counsel. When a habeas petitioner claims a breach of a plea bargain with the State, he bears the burden of proving (1) exactly what the terms of the alleged promises were, (2) exactly when, where, and by whom such a promise was made, and (3) the precise identity of any eyewitnesses to the promise. Bonvillian v. Blackburn, 780 F.2d 1248, 1250-51 (5th Cir. 1986). When a habeas petitioner claims that his counsel promised a sentence, the Fifth Circuit has required he establish that counsel clearly and unequivocally guaranteed a lesser sentence or some other specific leniency such as parole. The petitioner must show (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. Bond v. Dretke, 384 F.3d 166 (5th Cir. 2004); Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002).

Petitioner has not pointed to any evidence in the record to back his assertion that he was led to believe, whether by the prosecutor or defense counsel, that he would receive a 20-year sentence in exchange for his guilty plea. There is not even circumstantial evidence

or ambiguity in the record that might support the claim. The terms of the plea and the later agreement regarding sentence were discussed in specific detail in the presence of Petitioner, and he never uttered any contention that he believed the terms were different. There is no basis, under any standard of review, to find that this claim has habeas merit.

**Excessive Sentence**

Petitioner raised a pro se assignment of error on direct appeal that his 30-year sentence was excessive and disproportionate because he did not have the specific intent to kill the officer and because his attorney allegedly told him that he would receive the minimum sentence of 20 years if he pled guilty. He urges that same claim as the basis for habeas relief.

The state appellate court noted that the sentence was within the statutory range, and the sentencing judge took note of Petitioner's age, lack of criminal history, and his expression of remorse. But the sentencing judge also noted the serious nature of the crime and that the officer might have died from the injury had he not been wearing a bullet resistant vest. The appellate court pointed out that Petitioner was involved in significant drug trafficking, and he received substantial benefit from the State's agreement to dismiss a drug charge that exposed him to an additional sentence of 5 to 30 years.

The appellate court also found that the record "does not contain any evidence to support the defendant's claim that his attorney had advised him that he would receive the minimum sentence of 20 years." The court pointed to the transcripts of the guilty plea and sentencing that undermined this claim. It found that the sentence imposed "is not grossly disproportionate to the severity of the crime and does not shock the sense of justice." State

v. Osborne, 167 So.3d 1085, 1095-96 (La. App. 2d Cir. 2015), writ denied, 192 So.3d 741 (La. 2016).

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of the clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the sentencing area are not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

The sentencing decision in this case, and the review of it on appeal, appear to be well considered and entirely reasonable under the applicable facts. The state appellate court determined that Petitioner's sentence was not grossly disproportionate to the crime. As in Lockyer, the state court's decision on this issue was not contrary to, or an unreasonable application of, any clearly established Supreme Court precedent, so habeas relief is not permitted on this final claim.

Accordingly,

It is recommended that the petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2020.